J-A33042-16

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| ALDIS RUTYNA AND MARY JANE RUTYNA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| WILLIAM S. SCHWEERS, JR., | |
| Appellee | No. 895 WDA 2016 |

Appeal from the Order Entered June 1, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 07-025594

BEFORE:    LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY SOLANO, J.:        **FILED MARCH 27, 2017**

I respectfully dissent.  The Rutynas should have been granted a continuance so that they could find a new medical expert.  The Rutynas did not learn until May 10, 2016 — less than one month before the scheduled start of trial — that their medical expert, Dr. Mark Foster, had agreed on April 29, 2016, "not to serve as an expert witness adverse to UPMC, any of its affiliated entities, or any of its physicians or other health care providers, in any pending or future matter in any jurisdiction."  UPMC is the medical facility allegedly responsible for the injuries to Mr. Rutyna that are at issue in this case.  There is no evidence that the Rutynas were negligent in not learning of Dr. Foster's agreement sooner.  Indeed, their counsel had contacted Dr. Foster just one day before the date of the agreement to

---

[*] Retired Senior Judge assigned to the Superior Court.

confirm Dr. Foster's preparation for trial, and Dr. Foster gave no indication at that time that he was entering into an agreement not to testify on the Rutynas' behalf. The Rutynas therefore were blindsided.

The Rutynas point out that the Foster agreement was negotiated on behalf of UPMC by the same law firm that represents Attorney Schweers, the appellee in this action, and that the attorney for UPMC and Schweers obtained a continuance of the scheduled trial date in this case just a few months before final execution of the Foster–UPMC agreement. They raise various suspicions of misconduct relating to that timing. The Court concludes that those suspicions are unfounded, and that may be correct. But that does not mean that the Rutynas were not entitled to a continuance to find a new medical expert after Dr. Foster disappeared pursuant to his agreement with UPMC.

Applying what resembles a "no harm/no foul" analysis, the Court suggests that Dr. Foster's last-minute unavailability pursuant to his agreement with UPMC does not matter because Dr. Foster, who is still licensed and engaged in clinical practice, was not qualified to provide expert testimony under the MCARE Act. But determining whether an expert is qualified under the MCARE Act generally requires an evidentiary hearing and questioning of the proposed expert in a *voir dire*. ***Vicari v. Spiegel***, 989 A.2d 1277, 1284 (Pa. 2010). The trial court ruled on Dr. Foster's qualifications without ever conducting a *voir dire*, and, as the Majority points

out, the trial court could not conduct that *voir dire* because Dr. Foster's agreement with UPMC made Dr. Foster unavailable to testify at a hearing. The Court's analysis on this issue therefore is circular.

The Court also makes an independent determination — apparently, as a matter of law — that Dr. Foster was not qualified to testify under MCARE because Schweers submitted an affidavit filed by Dr. Foster in another case that stated that he "no longer practices as an orthopedic surgeon." Citing Section 512(c)(2) of the MCARE Act, 40 P.S. § 1303.512(c)(2), the Court notes that an expert testifying as to a physician's standard of care must practice "in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue." As the Supreme Court pointed out in **Vicari**, 989 A.2d at 1283-86, Section 512 requires a fact-intensive inquiry. Section 512(e) states that the trial court may waive the requirements of Section 512(c)(2) "if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period." 40 P.S. § 1303.512(e). The trial court declined to exercise its discretion to waive the Section 512(c)(2) requirements, stating that it did not "see any basis for doing so." N.T., 6/1/2016, at 70. But it made that decision without hearing Dr. Foster at a *voir dire* — again, because the UPMC

agreement made Dr. Foster unavailable. I believe it was improper to make a determination regarding Dr. Foster's qualifications without a proper evidentiary hearing.

Just a few months ago, this Court concluded that Dr. Foster **is** qualified to testify as an expert on the standard of care in an MCARE case. **Price v. Catanzariti**, 2016 WL 6946476 (Pa. Super., Nov. 28, 2016) (non-precedential memorandum; No. 1886 WDA 2014), *pet. for allow. of appeal filed*, No. 529 WAL 2016 (Pa., Dec. 28, 2016). The Court says we may not consider the decision in **Price** because it is an unpublished memorandum and such a decision "shall not be relied upon or cited" under our Internal Operating Procedures. **See** 210 Pa. Code § 65.37. I agree that the current IOP precludes reliance on the reasoning or legal holding set forth in a memorandum decision. But it does not preclude us from taking into account the fact that Dr. Foster was determined to be a qualified expert in a very recent case — particularly given that we decided **Price** following a remand order from the Supreme Court that directed us to decide that issue. **See Price v. Catanzariti**, 2016 WL 4989968 (Pa., Sept. 19, 2016) (No. 177 WAL 2016). The point is not that our holding in **Price** is controlling here or that the reasoning of our memorandum should be followed here. Rather, it is the **fact** that Dr. Foster was recently held on appeal to be a qualified expert in an MCARE case, which suggests that we should not now be quick to deem him unqualified as a matter of law. **Price** shows that Dr. Foster's

lack of qualifications is not so clear that we should use that conclusion as a basis for holding that the Rutynas were not harmed by the disappearance of their expert on the eve of trial.

It may be that an evidentiary record would establish that Dr. Foster was not qualified to give expert testimony in this case. But the Rutynas were entitled to try to prove otherwise at a hearing, and because the Foster–UPMC agreement deprived them of that opportunity, I believe that the Rutynas were entitled to a continuance to try to find a new expert.

I understand that this case has been pending for more than 10 years, that it has been before this Court twice before, and that the trial court had an understandable desire to put this matter to an end. But the convoluted history of this litigation only highlights the serial misfortunes that the Rutynas have faced as they have tried to obtain compensation for their alleged injuries. The unavailability of a material witness is an authorized basis for granting a continuance. Pa. R. Civ. P. 216(A)(3). The unavailability of Dr. Foster was due to no fault of the Rutynas and could not have been foreseen by them. I therefore believe it was an abuse of discretion to deny a continuance so that they could obtain a new expert, and I therefore respectfully dissent.